UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen L. PEISTER,
Defendant-Appellant.

No. 78–1961.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 11, 1979.

Decided Aug. 4, 1980.

**660**

Steven L. Peister, pro se.

Carole C. Dominguin, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with her on the brief), for plaintiff-appellee.

Before DOYLE, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Steven L. Peister was found guilty by a jury of violating I.R.C. § 7205, 26 U.S.C. § 7205, for willfully supplying false or fraudulent information to his employer on a withholding exemption certificate form W–4. Peister raises a number of issues on appeal which we treat under the following categories: (1) infringement upon right to counsel; (2) prosecutorial misconduct; (3) admissibility of certain testimony; (4) sufficiency of the evidence to sustain the verdict; (5) the judge's interpretation of willfulness and a good faith defense; (6) failure of the judge to rule on whether defendant was exempt from withholding under I.R.C. § 3401(a)(9); and (7) the prosecution as a violation of Peister's First Amendment rights.

In the latter part of 1976, Peister formed a church called the Life Science Church of Friendly Hills using materials he purchased from William Drexler. Peister became the minister of the church, and his wife and parents became its trustees. The church held services on Wednesday nights with prayers and sermons.

In connection with organizing the church, Peister took a vow of poverty and purportedly made an irrevocable gift of all his worldly possessions to the church as a re-quirement of his admission to the Order of Almighty God. Pursuant to the vow, the Peisters executed a quitclaim deed conveying their home to the church. According to the testimony, members of the Order of Almighty God were required to hold assigned outside jobs to raise funds for the church. Frederick Meyer, a bishop in the Order, assigned Peister to continue working as a pressman at Rocky Mountain Bank Note Company, the job he held prior to admission to the Order.

Peister maintained checking accounts in the church name at a succession of banks, and he deposited all but one of his paychecks received during this period in a church bank account. Peister and his wife were the only authorized signators on these accounts. There was substantially no difference between the expenditures made with checks drawn on the Peisters' individual accounts prior to this time and the expenditures from the church accounts, which included payment of personal living expenses of the Peisters.

In December 1976 Peister attempted to stop tax withholding from his wages by submitting a statutory notice to his employer stating he had taken a vow of poverty and so was not subject to withholding. The employer refused to comply with the request directly, but told him he could contact the Internal Revenue Service (IRS). Peister corresponded with the IRS, which informed him he was not exempt from withholding under I.R.C. § 3401(a)(9).[1] On January 25, 1977, Peister submitted a W–4 form to the employer on which he claimed 99 exemptions. This submission was the basis for his indictment.

I.R.C. § 3402(f) lists the exemptions an employee can claim on the withholding certificate. These are limited to a personal exemption and exemptions for a spouse, dependents, old age, blindness and for excess itemized deductions. The government's expert testified at trial that under this provision Peister at most would be enti-

---

1. The IRS position was based on Rev.Rul. 77-290, 1977–2 C.B. 26; Rev.Rul. 76–323, 1976–2 C.B. 18.

tled to three exemptions. Peister did not contest this calculation, but raised a good faith defense based on I.R.C. § 3401(a)(9), which exempts from the withholding requirements remuneration received "by a member of a religious order in the exercise of duties required by such order." Peister maintains he is required by his order to work at Rocky Mountain Bank Note Company. He also claims that he used "99" on his W–4 form because he believed it was a computer code used to signify no withholding.

## I

Peister represented himself at the arraignment and pretrial hearings he attended. In a pretrial motion for continuance he declared that he was seeking "effective and competent counsel . . . who can be expected to exercise loyalty to his client's interests," counsel with whom he was comfortable, agreeable, and compatible. In a pretrial hearing he made the following statement to the judge concerning his attempts to find a lawyer:

> Your Honor, I am still actively seeking counsel, your Honor, and I have the problem that the attorneys who I contacted who I felt would be able to represent me and who felt that they would be willing to take the case are simply beyond my means now.

> I am attempting to raise the necessary funds so that I can go forward with them. The other attorneys simply were unwilling or were unable to take the case, so at this point I am not represented by counsel.

The judge then informed Peister of his right to have counsel appointed upon showing his inability to pay for one by the required financial affidavit. Asserting he could not fill out the affidavit disclosing his assets without incriminating himself on matters at issue in this criminal prosecution, Peister asked the judge to guarantee him immunity on the answers. The court refused to do so, ruling that it could not grant immunity and that any "choice" between right to counsel and right against

self-incrimination did not violate Peister's constitutional rights. Peister then proceeded pro se throughout the trial and this appeal. We decide that Peister's constitutional rights were not violated.

Arguably, defendant never represented here that he could hire no lawyer, but only that he could not find a lawyer compatible with his views who would represent him for a charge he was willing to pay. There is no absolute right to counsel of one's choice. *See United States v. Weninger*, 624 F.2d 163 (10th Cir. 1980). Nevertheless, for purposes of this case we assume that Peister desired appointed counsel because he could not afford any lawyer.

In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that testimony given by a criminal defendant in support of a motion to suppress cannot be used against that defendant at trial; otherwise defendant would be

> obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

*Id.* at 394, 88 S.Ct. at 976. In *United States v. Salvucci*, —— U.S. ——, ——, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980), the court referred to, with approval, the "use immunity" granted by *Simmons*. The Supreme Court has not yet decided whether this principle should be applied to Sixth Amendment claims for counsel, *see United States v. Kahan*, 415 U.S. 239, 243, 94 S.Ct. 1179, 1181, 39 L.Ed.2d 297 (1974), but several circuit courts have so applied it. *See United States v. Anderson*, 567 F.2d 839 (8th Cir. 1977); *United States v. Ellsworth*, 547

F.2d 1096 (9th Cir.), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977); *United States v. Branker*, 418 F.2d 378 (2d Cir. 1969).

■ Peister's claim of Fifth Amendment protection against self-incrimination is based on the assumption that execution of the financial disclosure form would incriminate him. On the record presented, we do not know whether it would or not. We know neither the financial ability of the defendant nor what use, if any, might ever be made by the government of defendant's statements with regard to financial ability. The burden is on the defendant to demonstrate financial inability in order to obtain counsel. *United States v. Ellsworth*, 547 F.2d 1096 (9th Cir.), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977). We hold defendant should not be relieved of this burden when any conflict with the Fifth Amendment right is speculative and prospective only. The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so.

## II

■ Peister claims it was error for the prosecutor to cross-examine him on the identity of the other members of his church. Because Peister claimed First Amendment protection from answering, it is argued the jury could have inferred that the members of the church had something to hide. Peister objected to the prosecutor's question when it was asked, and the court sustained the objection. The court later informed the jury that the reason for the ruling was to protect the members' rights to freedom of association and religion. We do not believe this exchange requires reversal. Any negative inference that arose was only indirectly connected with Peister. Also, the judge's explanation legitimized defendant's objection.

■ The second alleged error concerns the following statement made by the prosecuting attorney in closing argument:

You'll be instructed that it is anybody's right to agree—to disagree with the IRS, and revenue rulings are not the law in the sense they are not statutory law passed by Congress.

They are the official position, the interpretation of the Internal Revenue Service on the law.

So, you can disagree with it, but ladies and gentlemen, the fact that you can disagree with the Internal Revenue Service doesn't preclude you from finding Mr. Peister willfully disagreeing with the Internal Revenue Service.

If you disagree and you do it willfully, then you are guilty of a crime.

This inarticulate statement might have left the impression with the jury that mere disagreement with the IRS, rather than a willful intention to violate the law, is sufficient to establish a violation. The jury, however, was adequately instructed by the court on willfulness and a good faith defense, and the instructions made it clear that mere disagreement was not sufficient. *See*, discussion in Part V, *infra*. We hold, therefore, that any misleading impression was cured.

## III

Peister objects to the testimony of two witnesses, Dennis Clark and Randy DeLano, called in rebuttal by the government. Clark and DeLano had known Peister and attended his church. Each of them had set up a church similar to Peister's, with the same materials from William Drexler. They both testified in response to cross-examination by Peister that their intention in forming the churches was tax avoidance, and that they had been offered immunity by the local United States Attorney's Office if they would testify in this case. After their testimony the trial judge warned both witnesses, outside of the presence of the jury, that the promise of immunity they had received was not binding on the court or on the United States government. The government attorney responded that what was given them was not "formal" immuni-

ty, but was a promise binding on the United States Attorney's Office for the District of Colorado and was done often by that office.

 Peister first contends it was prejudicial error for the government to induce witnesses to testify on "false pretenses." We find no evidence that the prosecution acted in bad faith here or overstepped the bounds of propriety and fairness; it apparently believed that a promise not to prosecute by the District of Colorado Office was of value, even though not binding elsewhere. That Clark and DeLano had been offered immunity was certainly relevant to the probative weight of their testimony, but this fact was adequately brought out by Peister at trial. We hold there was no error here.

 The second contention is that Clark's and DeLano's testimony was irrelevant and prejudicial because statements concerning their tax avoidance intent implied guilt by association. We see no merit in this argument. Clark and DeLano were used only as rebuttal witnesses to refute Peister's testimony about his church. Peister, not the government attorney, questioned them about their intent in setting up the church. Further, since Peister did not object to the testimony at trial, reversal is not proper unless the error is "plain error" under Fed. R.Crim.P. 52(b). It is not.

## IV

 We next consider whether there was sufficient evidence of willfulness. The standard applied on appeal is whether the evidence, viewed in the light most favorable to the government, is sufficient for the jury to find defendant guilty beyond a reasonable doubt. *United States v. Wright*, 450 F.2d 992, 993–94 (10th Cir. 1971). In the instant case the record contains adequate evidence from which the jury could infer that Peister set up the church to avoid taxes. Viewed most favorably to the government, the evidence showed the church was a shell entity, fully controlled by Peister and his wife, or at the least by them together with Peister's parents. The vow of poverty was one in form only, and had no substantive effect on defendant's lifestyle. The use of the purchased forms to establish the church and the sequence of events all indicate a deliberate plan to manufacture a religious order exemption. The jury apparently chose to disbelieve Peister's testimony of his belief in the church, and that was within the jury's power as the fact finder.

## V

 Peister raises two contentions concerning interpretation of the willfulness requirement of I.R.C. § 7205. First, he argues that mere disagreement with the IRS on the applicability of I.R.C. § 3401(a)(9) does not constitute willfulness; and second, he asserts he cannot be convicted here because he relied in good faith on being exempt from withholding under that section. The jury was correctly instructed on willfulness.[2] *See United States v. Hudler*, 605 F.2d 488, 490 (10th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). In addition, the judge recited the IRS's position on the matter and specifically cautioned the jury that they were not

---

**2.** The following instruction was given on the element of willfulness:

The term willfully used in connection with this offense means voluntarily, purposefully, deliberately and intentionally as distinguished from accident, inadvertently or negligently.

Near [sic] negligence, even gross negligence is not sufficient to constitute willfulness under the criminal law.

The supplying of false or fraudulent information to an employer is willful if the Defendant's act was voluntary and purposeful and with the specific intent to do what he knew the law forbids, that is to say with the purpose to disobey or disregard the law.

There is no necessity that the Government prove that the Defendant had an intention to evade the payment of any taxes for the supplying of false or fraudulent information to be willful under this provision of the law.

On the other hand, the Defendant's conduct is not willful if you find that he supplied the information because of negligence, inadvertence, accident or reckless disregard for the requirements of the law or due to his good faith, misunderstanding of the requirements of the law.

to decide whether that interpretation was correct. We hold these instructions adequately disspelled any notion that "mere disagreement" was sufficient to constitute willfulness.

 Whether Peister acted in good faith was a question for the jury, of course. The following instructions were given concerning Peister's good faith defense:

The position of the Defendant here, Mr. Stephen L. Peister, is that he was entitled to take as many allowances as were necessary to avoid withholding from wages paid by Rocky Mountain Bank Note Company upon the claim that he was and is a duly ordained, commissioned or licensed minister of a church or member of a religious order performing duties required by that order and is therefore exempt from the withholding pursuant to Title 26, United States Code, Section 3401A9. [3401(a)(9)]

. . . . .

The evidence has also shown that the Defendant was advised by correspondence from the Internal Revenue Service that his wages from Rocky Mountain Bank Note Company were subject to income tax and Social Security tax, because IRS regulations provided that the withholding exemption does not apply to members of religious orders where the remuneration is paid under an employer-employee relationship with a third party and a member of the religious order.

In this case, I am not able to rule as a matter of law as to whether that interpretation is correct, because to do so would require me to make findings of fact which would invade the province of the jury.

Neither is it for you to decide if a Defendant's earnings from the Rocky Mountain Bank Note Company are or are not within the statutory exemption in 26 US Code, Section 3401A9 [3401(a)(9)] as a matter of law.

The question of fact for you to decide is whether the Defendant honestly thought that he was within the statutory exemption from withholding requirements.

If he had such a good faith belief, then he was not willfully supplying his employer with false or fraudulent information, and he could not be found guilty of the charge made against him.

Mr. Peister also contends that because of his claims of exemption, he was entitled to take as many allowances on his W–4 form as necessary to avoid any withholding.

The Internal Revenue Code provides for a withholding exemption from the taxpayer and any dependents, and it also provides the one additional allowance for each seven hundred and fifty dollars by which itemized deductions exceed the standard deduction.

In this case, the Defendant claimed ninety-nine withholding allowances.

It is his position that this number of exemptions was claimed because the payroll at Rocky Mountain Bank Note was prepared by the computer, and that number is computer code to prevent withholding.

The question in fact for the jury to decide is whether the Defendant Stephen Peister had a good faith belief and opinion that he was entitled to the exemption from withholding as he claimed.

Such a belief goes to the essential element of willfulness, and a failure to understand the law or a misinterpretation of the law if honestly held would entitle the Defendant to an acquittal of the charge here made against him.

We hold these instructions allowed the jury to acquit Peister if they found he held a good faith belief that he was exempt from withholding and that using 99 exemptions was the way to prevent withholding.

## VI

 Peister next argues it was error for the judge not to rule on whether he was actually exempt from withholding under I.R.C. § 3401(a)(9). The judge treated the question as a collateral issue not essential to the case. We agree. The issue here was whether Peister willfully provided false in-

formation on the W–4 form in violation of I.R.C. § 7205. Peister could have been acquitted on the good faith defense even if he was not exempt from withholding. Conversely, a decision that he was exempt from withholding would not have entitled him to acquittal; "99 exemptions" would still be false. "Defendant chose to supply the W–4 form to his employers. He may not with impunity willfully use the form to furnish false or fraudulent information." *United States v. Hudler*, 605 F.2d 488, 490 (10th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

### VII

■ Peister's final argument is that his prosecution under I.R.C. § 7205 violates his right to freedom of religion under the First Amendment. This argument is without merit. Section 7205 does not involve religion directly. Peister injected his religious beliefs into the lawsuit by asserting a defense of good faith reliance on an I.R.C. § 3401(a)(9) exemption. It was necessary for the government to refute this defense by showing Peister did not have a sincere belief in the church, but set it up for tax avoidance purposes. This is within the government's power and does not violate First Amendment rights. *See United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1965); *Christian Echoes Nat'l Ministry, Inc. v. United States*, 470 F.2d 849, 856–57 (10th Cir. 1972), *cert. denied*, 414 U.S. 864, 94 S.Ct. 41, 38 L.Ed.2d 84 (1973).

The judgment is affirmed.