*206 OPINION OF THE COURT
Joan O’Dwyer, J.
On January 10, 1996 the defendant was indicted for, inter alia, scheme to defraud in the first degree. He was arraigned upon this indictment on February 15, 1996, at which time the People served notice of their intent to offer at trial statements made by the defendant to the Honorable James Griffin in Part AP-6 on October 10, October 24, and November 16, 1995. On June 21, 1996 the defendant moved for the suppression of these statements or, in the alternative, for a Huntley hearing to determine their admissibility at trial. On October 16, 1996 a Huntley hearing was granted by the Honorable Charles LaTorella, who referred the matter to this Part.
The parties agreed that the Huntley hearing would consist of the transcripts of the defendant’s appearances in Part AP-6, as well as of a 1990 tax return and statement of the defendant’s purported net worth in 1990, which the court would consider along with the legal arguments contained within each party’s memorandum of law and reply memorandum of law.
The defendant’s position is that the statements he made in Part AP-6 were made in furtherance of obtaining court-appointed counsel, and therefore may not be used against him at trial. He cites United States v Branker (418 F2d 378 [2d Cir 1969]) in support of this assertion. The People, however, cite People v Rodney (85 NY2d 289 [1995]) and claim that the defendant’s responses to "routine administrative questioning” are admissible at trial. They further assert that to the . extent that the ruling in Branker applies to the case at bar, such ruling is inapplicable to false statements or to outbursts which were not responsive to questioning regarding the defendant’s ability to retain counsel.
In the opinion of the court, the ruling in United States v Branker (supra), as well as those in other Federal court cases, is dispositive of the issue at bar.
In Branker (supra), the prosecutor introduced into evidence certain testimony which the defendant had given at a hearing or his application to proceed in forma pauperis and for appointment of counsel. The Second Circuit found the admission of this evidence to be improper, holding that: "[w]e are of the view that the government should not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking forma pauperis relief or the assignment of counsel on the ground of his financial inability to *207 pay court costs, to procure the minutes, or to secure counsel” (United States v Branker, supra, at 380).
The court further held that the defendant "should enjoy his constitutional rights to counsel * * * and the means of supporting his assertion of these rights * * * without running the risk that thereby he may be incriminating himself with respect to the charges pending against him” (supra).
In reaching this conclusion, the Branker court cited the United States Supreme Court ruling in Simmons v United States (390 US 377), which held that testimony given by a defendant at a pretrial suppression hearing may not be used against him at trial. The Branker court applied the Simmons rationale to its own case and concluded that the constitutional right to counsel is "no less important than the constitutional rights to protection against illegal searches and seizures and coerced confessions” (United States v Branker, supra, at 381).
In United States v Anderson (567 F2d 839 [8th Cir 1977]), the defendant refused to fill out the standard form required to proceed in forma pauperis because he feared that some of the information requested "might aid in future tax prosecution” (supra, at 840). He argued that "he should not be forced to give up his Fifth Amendment right against self-incrimination in order to secure his Sixth Amendment right to counsel” (supra). The Eighth Circuit held that the defendant should have been given the opportunity to disclose to the trial court the financial information necessary to obtain court-appointed counsel, but that this information should then have been sealed "and not made available for the purpose of tax prosecution” (supra). In reaching this conclusion, the court, citing United States v Branker (supra), found that "[t]o hold otherwise would force [the defendant] to choose between his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination. Such a choice is constitutionally impermissible” (United States v Anderson, supra, at 840-841; see also, United States v Ellsworth, 547 F2d 1096 [9th Cir 1976], cert denied 431 US 931 [1977]).
In United States v Pavelko (992 F2d 32 [3d Cir 1993], cert denied sub nom. Kenney v United States, 510 US 900 [1993]), the court recognized the judicial obligation to inquire as to a defendant’s financial ability to obtain counsel and to appoint counsel when appropriate. It therefore found that no error had been committed by the Magistrate’s questioning of the defendant, but that "[t]he error was committed by the district court when it admitted [into evidence] the testimony and the *208 financial affidavit,” thereby creating "a tension between [the defendant’s] Fifth and Sixth Amendment rights” (supra, at 34). The Pavelko court held that the lower court had "conditioned the free exercise of one constitutional right upon waiver of the other” and also cited the Supreme Court decision in Simmons (supra), in support of its ruling that one constitutional right should not have to be surrendered in order to assert another (United States v Pavelko, supra, at 34).
In the opinion of the court, the holdings and rationales in Branker (supra), Anderson (supra), and Pavelko (supra) are dis-positive of the issue presented in the case at bar. The court recognizes that the United States Supreme Court "has not yet decided whether [the] principle [in Simmons (supra)] should be applied to Sixth Amendment claims for counsel” (United States v Peister, 631 F2d 658, 661 [10th Cir 1980], cert denied 449 US 1126, citing United States v Kahan, 415 US 239 [1974]). Nevertheless, since the Supreme Court did not reverse the rulings in Branker, Anderson, or Pavelko, but simply has not adopted them, the court finds these decisions to be controlling. Accordingly, statements made by the defendant in furtherance of his attempts to obtain counsel are not admissible at trial.
The People argue that even if the Branker ruling is followed in the present case, not all of the statements made by the defendant before Judge Griffin should be suppressed. They assert that many "incriminating remarks” were blurted out by the defendant and not made in response to questions posed by Judge Griffin or the prosecutor, and therefore are admissible as "spontaneously volunteered”.
Although the court is aware that "the blanket exclusion” of all remarks made by a defendant at a hearing to obtain appointed counsel is neither warranted nor legally mandated (see, United States v Pavelko, supra, at 34), it finds that all of the statements made by the defendant in the present case, whether directly responsive to the questions put to him or not, were designed to convince Judge Griffin that he was entitled to the appointment of counsel. They therefore must be suppressed.
The last issue before the court is the extent to which the People will be permitted to introduce into evidence false statements or responses made by the defendant to Judge Griffin. In the opinion of the court, the United States Supreme Court in United States v Kahan (supra) has found that they may. In Kahan, the defendant’s misrepresentation to the court in response to its question as to whether he had the funds to hire an at *209 torney was admitted against him at trial, and he was convicted. The Court of Appeals, citing Branker (supra), reversed the defendant’s conviction, holding that the admission of the false statement violated the defendant’s Fifth and Sixth Amendment rights and that the "ultimate truth of the matter asserted in the pre-trial request for appointed counsel [was] of no moment” (United States v Kahan, 479 F2d 290, 292 [2d Cir 1973]). In reversing the Court of Appeals, the United States Supreme Court found that "the incriminating component of respondent’s pretrial statements derives not from their content but from respondent’s knowledge of their falsity” (United States v Kahan, 415 US, supra, at 243). It held that the "protective shield of Simmons is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood” (United States v Kahan, 415 US, supra, at 243).
In the opinion of the court, the ruling in Kahan (supra) permits the People to use any statement made by the defendant to the court which is inconsistent with any other statement he made, either before or after the statement in question, provided, of course, that the jury is instructed to consider the false statement "for the limited purposes * * * for which [it was] introduced” (United States v Kahan, 415 US, supra, at 241, n 2).
The court notes that it is the Trial Judge who will be best able to determine whether or not a particular statement or response made by the defendant in furtherance of his right to appointed counsel is a misrepresentation, and the extent to which it may be used by the People at trial.
Based upon the foregoing, the defendant’s motion to suppress statements is granted, with the limitation noted above.