Joel LEVINE, et al., Petitioners,

v.

UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent,

United States of America, Real Party in Interest.

C.A. No. 85–7208.

United States Court of Appeals, Ninth Circuit.

Nov. 1, 1985.

As Amended Nov. 12, 1985.

Paul L. Hoffman, Joan Howarth, Douglas E. Mirell, David P. Crochetiere, Los Angeles, Cal., for petitioners.

Robert C. Bonner, U.S. Atty., Robert L. Brosio, Russell Hayman, Asst. U.S. Attys., Los Angeles, Cal., for respondent Dist. of Cal., etc.

Before SNEED, NELSON and BEEZER, Circuit Judges.

## ORDER

Prior report: 764 F.2d 590 (9th Cir.1985).

Judges Sneed and Beezer have voted to deny the petition for rehearing and to reject the petitioners' suggestion for rehearing en banc. Judge Nelson would grant the petition for rehearing and approve the petitioners' suggestion for rehearing en banc.

The full court has been advised of the suggestion for en banc rehearing. A vote has been taken, and has failed to receive a majority of votes in favor of en banc consideration. Fed.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

NORRIS, Circuit Judge, dissenting, with whom PREGERSON, FERGUSON, NELSON and REINHARDT, Circuit Judges, join.

I regret that a majority of our active judges have failed to vote to rehear this case *en banc.* The case raises an extraordinarily important constitutional issue: to what extent does the First Amendment limit the authority of trial judges to restrain the extra-judicial comments of criminal defendants and their lawyers? In the absence of controlling Supreme Court precedent, the decision in this case—the first from any circuit to approve a gag order on defense attorneys under the "clear and present danger" standard—is likely to have a broad impact on the freedom of expression of trial participants throughout the nation. Moreover, the decision will significantly restrict the media's ability to gather information and the public's right to be informed about our criminal justice system. Finally, I agree with Judge Nelson that the decision cannot be reconciled with the Supreme Court's decision in *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), and this court's decisions in *CBS, Inc. v. United States District Court,* 729 F.2d 1174 (9th Cir.1984), and *Associated Press v. United States District Court,* 705 F.2d 1143 (9th Cir.1983). *See Levine v. United States District Court,* 764 F.2d 590, 603–04 (9th Cir.1985) (Nelson, J., concurring in part, dissenting in part).

The district court's gag order in this case was largely in response to a single article published on March 3, 1985, in the **Los Angeles Times.** That article was based upon statements attributed to defense lawyers charging that the FBI had exaggerated the evidence against their clients. These statements were made in response to allegations made by the government, both in a formal indictment and in extrajudicial statements charging the client with espionage. Just as the government was levelling its charges in the public forum, so too was the defense being presented in the marketplace of ideas.

Implicit in Judge Beezer's majority and Judge Sneed's concurring opinions is that there is something improper and perhaps even unethical about a lawyer who refuses to limit his client's defense to in-court statements. This, I submit, is a myopic view of the role of a lawyer when he is carrying out what may be the noblest calling of our profession, representing a person charged by the state with a crime. As Judge Hand once observed, "indictments are calamities to honest men." *United States v. Garsson,* 291 F. 646, 649 (S.D.N.Y.1923). When, as in this case, the indictment is the subject of great public interest, the damage to the accused's reputation and the accompanying emotional distress can be greatly magnified. Under circumstances such as these, I agree with President (then Congressman) Buchanan's statement—made at the impeachment trial of Judge Peck, who had jailed a lawyer because of his criticism of the judge—that it is "the imperative duty of an attorney to protect the interests of his client out of court as well as in court." A. Stansbury, **Report of the Trial of James H. Peck** 455 (1833). The range of options available to the lawyer must include speaking out publicly to mitigate the damage to the client in the eyes of the community at large. Marshalled against an accused is not only the awesome resources and prestige of the United States Government, but also the power of the media to disseminate the government's charges. I cannot accept the proposition that a person charged by his government with a crime should be denied the opportunity to defend himself publicly through his chosen spokesman. Suppose, for example, the accused wishes to charge that the indictment was politically or religiously motivated. The freedom to make such a charge against the state is surely paramount among the freedoms protected by the First Amendment. To deprive an accused of his most valuable resource in criticizing the government—his lawyer—is to restrict, and restrict severely, his First Amendment rights.

Because of my profound concerns about the adverse consequences of this decision, including its chilling effect on lawyers called upon to represent unpopular defendants in high visibility cases, I dissent from the order rejecting the suggestion for rehearing the case **en banc.**

PREGERSON, J., dissenting:

I join Judge Norris' dissent. I believe that respect for the right of free speech,

and faith in the ability of an American jury to arrive impartially at a just verdict based solely on the evidence presented in court, counsel against the issuance of "gag orders."