845 F.2d 1513
 56 USLW 2647, 56 USLW 2672, 15 Media
L. Rep. 1273
 SEATTLE TIMES COMPANY, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF
WASHINGTON, Respondent,
United States of America and Stella Nickell, Real Parties in
Interest.
HEARST CORPORATION, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF
WASHINGTON, Respondent,
United States of America and Stella Nickell, Real Parties in Interest.
 Nos. 88-7038, 88-7046.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 17, 1988.
Unpublished Order Feb. 29, 1988.
Decided April 20, 1988.
As Amended May 13, 1988.
 
 P. Cameron DeVore, Davis, Wright & Jones, Seattle, Wash., for petitioner Seattle Times Co.
 David Utevsky, Seattle, Wash. for petitioner Hearst Corp.
 Thomas W. Hillier, II, Federal Public Defender, Seattle, Wash., for real party in interest Stella Nickell.
 Joanne Y. Maida, Asst. U.S. Atty., Seattle, Wash., for real party in interest U.S.
 Petition for Writ of Mandamus to United States District Court for the Western District of Washington.
 Before KOELSCH, REINHARDT and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 The Seattle Times Company ("Times") and the Hearst Corporation ("Hearst") petition for a writ of mandamus to obtain access to four documents filed under seal in pretrial criminal proceedings. Stella Nickell and the United States are real parties in interest in opposition to the writ. We have expedited the disposition of this case. We issued an order February 29, 1988 granting the requested relief to be followed by this statement of our reasons.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Stella Nickell was indicted on December 9, 1987 on five counts of violating 18 U.S.C. Sec. 1365, a product tampering statute. The grand jury charged that she implanted potassium cyanide in Excedrin capsules, resulting in the death of her husband and of a woman unknown to her.
 
 
 3
 In May, 1987, while the case was under investigation, Nickell applied for court-appointed counsel. In support of her application, she filed a financial affidavit describing her income, property, and other financial details. United States Magistrate John L. Weinberg appointed the Federal Public Defender to represent Nickell and ordered the affidavit sealed. A second financial affidavit, dated December 9, 1987, was also sealed.
 
 
 4
 On December 9, 1987, United States Magistrate Philip K. Sweigert issued a bench warrant for Nickell and gave notice that the United States Attorney's office intended to request a pretrial detention hearing. The government and the defendant submitted briefs on the detention issue, each moving for leave to file the briefs under seal. Magistrate Sweigert entered orders on December 9 and December 11 granting the motions.
 
 
 5
 The detention hearing was held in open court on December 11, 1987 and Magistrate Sweigert entered a pretrial detention order. The government and Nickell then moved to withdraw the sealed briefs from the file. The Magistrate ordered the briefs returned to the respective parties. Nickell subsequently filed a written, and unsealed, motion to revoke the detention order. The district court denied this motion in a memorandum decision dated December 17, 1987. The district court also ordered the briefs refiled under seal. This court affirmed the detention order on January 8, 1988. On January 7, 1988, the defendant, without objection, moved that the trial be continued to April 18, 1988.
 
 
 6
 The Seattle Times filed a motion on December 18, 1987 to unseal the sealed portions of the court's file in the Nickell case. Hearst and Tacoma News, Inc. subsequently joined in the motion. The three newspapers, the government, and the defendant submitted briefs and presented oral argument at a hearing on January 11, 1988. The district court denied the motion, noting that presumably the documents would be unsealed at the close of the criminal trial.
 
 
 7
 The district court issued a supplemental order on February 8, 1988. The court ordered the detention memoranda released in redacted form, excising all references to the facts and evidence specific to this case. The memoranda as released consisted of essentially legal argument. Based on the defendant's fifth amendment rights, the court declined to release the financial affidavits in any form. Petitioners have made it clear in supplemental briefing and at oral argument that the redacted documents are not satisfactory.
 
 
 8
 The Times (joined by Tacoma News) and Hearst each filed a petition for a writ of mandamus with this court. These petitions have been consolidated for review.
 
 II.
 JURISDICTION
 
 9
 This court recognizes standing in parties such as Times and Hearst to seek review by petition for writ of mandamus of orders denying them access to judicial proceedings or documents. United States v. Brooklier, 685 F.2d 1162, 1165 (9th Cir.1982).
 
 III.
 STANDARD OF REVIEW
 
 10
 Mandamus relief is appropriate if the petitioner can show the presence of several of the factors set forth in Bauman v. United States Dist. Court, 557 F.2d 650 (9th Cir.1977). See Sacramento Bee v. United States Dist. Court, 656 F.2d 477, 480-81 (9th Cir.1981), cert. denied, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed. 861 (1982). These factors are: 1) the party seeking the writ has no other means, such as a direct appeal, of attaining the desired relief, 2) the petitioner will be damaged in a way not correctable on appeal, 3) the district court's order is clearly erroneous as a matter of law, 4) the order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and 5) the order raises new and important problems, or issues of law of first impression. Bauman, 557 F.2d at 654-55.
 
 
 11
 We review de novo whether the elements of the mandamus test are satisfied. Fallini v. Hodel, 783 F.2d 1343, 1345 (9th Cir.1986). Times and Hearst have established the presence of the first and second factors because petitioners lack standing to bring a direct appeal, Sacramento Bee, 656 F.2d at 481, and because they face a serious injury to an important first amendment right. The fifth factor also weighs heavily in favor of issuance of the writ because the issue of press access to pretrial detention hearings and documents is one of first impression in this circuit.
 
 
 12
 The key factor to be examined is whether "we are firmly convinced that [the] district court has erred in deciding" to seal the four documents. In re Cement Antitrust Litigation (MDL No. 296), 688 F.2d 1297, 1306-07 (9th Cir.1982), aff'd mem. sub nom. Arizona v. United States Dist. Court, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). We turn now to this question.
 
 IV.
 ANALYSIS
 
 13
 The first amendment guarantees the public and the press the right to attend criminal trials unless the defendant's right to a fair trial or some other overriding consideration requires closure. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07, 102 S.Ct. 2613, 2619-20, 73 L.Ed.2d 248 (1982); Richmond Newspapers v. Virginia, 448 U.S. 555, 580-81, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980) (plurality opinion). The Supreme Court has extended this right of access to preliminary hearings, as conducted in California, because of the tradition of accessibility and because these hearings are sufficiently like a trial to conclude that public access plays a significant role in their functioning. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 2741-43, 92 L.Ed.2d 1 (1986). The Court has not ruled on whether the right of access extends to pretrial proceedings generally.
 
 
 14
 This court has gone further and held that in general the public and the press have a qualified first amendment right of access to pretrial hearings and documents. See Associated Press v. United States Dist. Court, 705 F.2d 1143, 1145 (9th Cir.1983); see also Brooklier, 685 F.2d at 1167, 1170 (voir dire, suppression hearings and transcripts of closed proceedings). We have also held that a common law right of access may extend to documents such as presentence probation reports, provided the requesting party "make[s] some threshold showing that disclosure will serve the ends of justice" and there is no valid countervailing consideration that supports nondisclosure. See United States v. Schlette, 842 F. 2d 1574, 1581, 1582, n. 4 (9th Cir. 1988) (not addressing first amendment issue); see also id. at 1582-83 (discussing CBS, Inc. v. United States Dist. Court, 785 F.2d 823 (9th Cir.1985), which extended right of access to post-trial memorandum filed by government in response to sentence reduction motion under Fed.R.Crim.P. 35). The government argues here that the memoranda submitted by the parties on the detention issue should not be subject to the qualified right of press access.[1] We have not previously addressed this specific issue.
 
 
 15
 We begin with the presumption that the public and press have a right of access to criminal proceedings and documents. CBS, 765 F.2d at 825. The Supreme Court has articulated two considerations relevant to whether the right of access extends to a particular proceeding. First, the Court has considered whether the place and process has historically been open because " 'a tradition of accessibility implies the favorable judgment of experience.' " Globe Newspaper, 457 U.S. at 605, 102 S.Ct. at 2619 (quoting Richmond Newspapers, 448 U.S. at 589, 100 S.Ct. at 2834 (Brennan, J., concurring)).
 
 
 16
 Pretrial detention proceedings do not share with criminal trials an unbroken history of public access. Bail is often set in open court at the defendant's first appearance before the magistrate. But commonly the bail determination is made "by the judge when an indictment is returned or by the magistrate when an arrest warrant issues...." United States v. Chagra, 701 F.2d 354, 363 (5th Cir.1983).
 
 
 17
 This history and the prevalent use of informal procedures should not automatically foreclose a right of access. Pretrial proceedings have grown increasingly important in the modern era. Brooklier, 685 F.2d at 1170 (citing United States v. Criden, 675 F.2d 550, 555 (3d Cir.1982)). Specifically, bail procedures have become more significant. The Bail Reform Act of 1984 introduced the dangerousness of the defendant as an independent ground for pretrial detention and substantially changed the requisite procedures. The detainee now has a right to an immediate hearing and to counsel at the hearing, a right to testify, present witnesses and other information, and to cross-examine the witnesses against him. 18 U.S.C. Sec. 3142(f). Thus, when the government seeks pretrial detention on grounds of dangerousness, the previously common informal procedures are no longer adequate. Under these circumstances, the historical tradition surrounding bail proceedings is much less significant.
 
 
 18
 The second consideration relied upon by the Supreme Court weighs heavily in favor of a right of access to bail proceedings. The Court has examined whether public access plays a particularly significant positive role in the actual functioning of the proceeding. Press-Enterprise, 106 S.Ct. at 2742-43; Globe Newspaper, 457 U.S. at 606, 102 S.Ct. at 2619. We agree with the First and Third Circuits that pretrial release proceedings implicate the related policy concerns of a public educated in the workings of the justice system and a system subjected to healthy public scrutiny. In re Globe Newspaper Co., 729 F.2d 47, 51-2 (1st Cir.1984); Chagra, 701 F.2d at 363. Public interest in the conditions of pretrial release is understandably great because the community is directly affected. See United States v. Salerno, --- U.S. ----, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (Congress passed Bail Reform Act in response to pressing societal problem of crimes committed by persons on release). Also, this court has noted: "pretrial documents, such as those dealing with the question whether [the defendant] should be incarcerated prior to trial ... are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning." Associated Press, 705 F.2d at 1145.
 
 
 19
 Moreover, pretrial release decisions benefit from public scrutiny. The decision to hold a person presumed innocent of any crime without bail is one of major importance to the administration of justice. In re Globe, 729 F.2d at 52; see also Salerno, 107 S.Ct. at 2105 (liberty is the norm and pretrial detention is a "carefully limited exception"). Openness of the proceedings will help to ensure this important decision is properly reached and enhance public confidence in the process and result. Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1983).
 
 
 20
 We hold, therefore, that the press and public have a right of access to pretrial release proceedings and documents filed therein. This does not end our inquiry, however. The right of access is not absolute and must be balanced against the defendant's sixth amendment right to a fair trial. Sacramento Bee, 656 F.2d at 482. This court has developed three separate substantive tests that must be satisfied to justify abrogating the right of access.[2] We find that the district court's orders fail to pass two of these tests.
 
 
 21
 First, there must be a substantial probability that irreparable damage to the defendant's fair trial right will result if the documents are not sealed. Associated Press, 705 F.2d at 1146. No such showing has been made in this case. The pretrial detention memorandum filed by the government described the evidence against Nickell--particularly her motive, method of operation, physical evidence linking her to the crime, the results of the polygraph examination, and her prior convictions. Some of this evidence will not be admissible at trial. Nickell's memorandum in response was principally a legal argument. The financial affidavits merely contained an unremarkable recitation of assets and liabilities.
 
 
 22
 In denying the motion to unseal, the district court pointed out the extensive publicity the case has received and the dramatic nature of the crime. Pretrial publicity does not, however, lead in every criminal case to an unfair trial. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1976); CBS v. United States Dist. Court, 729 F.2d 1174, 1179 (9th Cir.1983). Recent more highly publicized cases indicate that most potential jurors are untainted by press coverage despite widespread publicity. See CBS, 729 F.2d at 1179. Associated Press and both CBS cases, for example, involved the prosecution of John DeLorean, an international celebrity, for cocaine trafficking. This court did not find the pervasive pretrial publicity conclusive. CBS, 765 F.2d at 825; CBS, 729 F.2d at 1179-80; Associated Press, 705 F.2d at 1146; see also In re Nat'l Broadcasting Co., Inc., 635 F.2d 945, 953 (2d Cir.1980) (extensive publicity about Abscam would not prevent selection of impartial jurors); United States v. Haldeman, 559 F.2d 31, 61-62 (D.C.Cir.1976) (publicity surrounding Watergate did not prevent a fair trial), cert. denied sub nom. Ehrlichman v. United States, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).
 
 
 23
 Thus pervasive publicity, without more, does not automatically result in an unfair trial. In assessing the prejudicial nature of such publicity, this court looks "not simply to its effect on individual viewers but to its capacity to inflame and prejudice the entire community." CBS, 729 F.2d at 1180. In other words, the publicity must create a " 'pattern of deep and bitter prejudice' ... throughout the community." Irvin v. Dowd, 366 U.S. 717, 727, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961). This court has recognized that cases involving lurid subject matter, particularly violent crimes, are more likely to arouse such prejudice. CBS, 729 F.2d at 1181.
 
 
 24
 The dramatic and violent nature of the crime is only one factor to be considered, however. In this case it is not dispositive for several reasons. First, prejudicial publicity is less likely to endanger the defendant's right to a fair trial in a large metropolitan area such as Seattle. Id. at 1181-82. Second, the sealed documents themselves are not either so inflammatory or so prejudicial as to irreparably damage Nickell's right to a fair trial. Finally, any prejudice is minimized because the disclosure will occur almost two months before the jury is scheduled to be impaneled. See Stroble v. California, 343 U.S. 181, 195, 72 S.Ct. 599, 606, 96 L.Ed. 872 (1952) (significant that newspaper accounts appeared six weeks before trial); cf. Sacramento Bee, 656 F.2d at 483 (exposure of jury to inadmissible evidence during trial would prejudice right to fair trial).
 
 
 25
 The order sealing the documents also fails the second test set forth in Brooklier and Associated Press. There must be a substantial probability that alternatives to closure will not adequately protect the right to a fair trial. Associated Press, 705 F.2d at 1146. The district court discussed the alternatives to sealing: voir dire, peremptory challenges and admonitions to the jury, continuance or change of venue, redaction, and media self-restraint. The district court, however, too easily dismissed the likelihood that an impartial jury could be impaneled through searching voir dire and the use of peremptory challenges. The court failed to consider the size of the Seattle metropolitan area from which a jury may be selected. The issue is not whether a potential juror is ignorant of the case, but whether he has a preconceived idea of the defendant's guilt or innocence. See Nebraska Press Ass'n, 427 U.S. at 565, 96 S.Ct. at 2805. Moreover, if voir dire fails to impanel an impartial jury, the options of a continuance or change of venue are still open.[3]
 
 
 26
 Finally, the third test requires a showing of " 'a substantial probability that closure will be effective in protecting against the perceived harm.' " Associated Press, 705 F.2d at 1146 (quoting Brooklier, 685 F.2d at 1167). The perceived harm here is prejudicial pretrial publicity. We have already determined that the sealed documents do not substantially impair defendant's fair trial right. Therefore, it is irrelevant whether sealing would be effective.
 
 
 27
 The district court's order sealing the four documents thus fails the first two tests set out in Associated Press. Accordingly, Nickell's sixth amendment right to a fair trial does not outweigh the public's and press' first amendment right of access.
 
 
 28
 Although not emphasized by the parties, the district court refused to unseal the financial affidavits on the ground that unsealing would violate Nickell's fifth amendment rights. The fifth amendment prevents the state from compelling the accused to make a testimonial communication that is incriminating. See Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1975).[4] To claim the privilege, the accused must be faced with substantial hazards of self-incrimination that are "real and appreciable" and not merely "imaginary and unsubstantial." United States v. Neff, 615 F.2d 1235, 1239 (9th Cir.1980).
 
 
 29
 The district court's determination here was based on an assumption that unsealing the financial affidavits would tend to incriminate Nickell. This assumption is premature. We do not know what use, if any, the government will try to make of the information contained in the affidavits. Therefore, any fifth amendment problem is at this juncture speculative and prospective only. We agree with the Tenth Circuit that "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant at trial," United States v. Peister, 631 F.2d 658, 662 (10th Cir.1980), or if the government attempts to use any information derived from the facts revealed in the affidavits.
 
 V.
 CONCLUSION
 
 30
 In sum, the public and the press have a qualified right of access to pretrial release proceedings and documents. The defendant's right to a fair trial overrides this right of access only when the three substantive tests set out in Associated Press are met. The district court's order failed the first two tests and was thus clearly erroneous as a matter of law. Moreover, any fifth amendment problem is too speculative at this point to justify sealing the financial affidavits. Therefore, we GRANT the petition for writ of mandamus and ORDER the district court to release the four documents filed under seal.
 
 REINHARDT, Circuit Judge, concurring:
 
 31
 I concur in Judge Wiggins' excellent opinion for the court. I join without reservation in the discussion regarding the first amendment. However, I believe the discussion of the fifth amendment issue, in particular the second paragraph of that discussion, at 1519, requires further comment.
 
 
 32
 The Supreme Court has held that, for purposes of the fifth amendment, when an accused is required to provide testimony in order to exercise a constitutional right the testimony has been "compelled". See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); see also United States v. Kahan, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974) (per curiam). In Simmons, the Court held that when a defendant testifies in support of a motion to suppress evidence on fourth amendment grounds, his testimony is covered by a form of "use immunity", and may not be used against him at trial on the issue of guilt. Simmons, 390 U.S. at 394, 88 S.Ct. at 976; see United States v. Salvucci, 448 U.S. 83, 93-94, 100 S.Ct. 2547, 2553-54, 65 L.Ed.2d 619 (1980). In Kahan, the Court considered, but did not decide, the issue of whether similar "use immunity" extends to statements a defendant makes with respect to his financial affairs in order to obtain court-appointed counsel.
 
 
 33
 If a defendant seeking a court-appointed attorney refuses to file a financial affidavit and claims the protection of the fifth amendment, we will have to decide the question left open in Kahan. At that time, as Justice Marshall noted, a choice will be required:
 
 
 34
 The first alternative is to permit the defendant seeking counsel as an indigent to lie about his financial situation wherever the truth might be incriminating. As a second alternative, we could require the defendant seeking appointment of counsel to tell the truth at the indigency hearing, and subject him to sanctions for his willful and knowing failure to do so, but bar use of any incriminating information so revealed.
 
 
 35
 Kahan, 415 U.S. at 247, 94 S.Ct. at 1183 (Marshall, J., dissenting). If we follow the rationale of Simmons and adopt the second alternative, we will hold that defendants who incriminate themselves when executing financial affidavits enjoy use immunity.
 
 
 36
 I agree with Judge Wiggins that it is not necessary for us now to decide any question relating to Nickell's fifth amendment rights. In the case before us the appropriate time for considering the fifth amendment issue is, as Judge Wiggins states, if and when the government seeks to use any material contained in the affidavit supplied by Nickell. I would add that, in my view, Nickell's financial disclosures were innocuous and, at most, they are highly unlikely to be incriminatory. In any event, the only conceivably incriminatory information would inevitably be discovered by the government, if it has not already done so.
 
 
 37
 The opinion should not be understood as holding that the only appropriate time to consider the fifth amendment issue is when the government seeks to use the testimony in question. At least until the question left open by the Court in Kahan is decided, it is appropriate for a defendant to raise a fifth amendment objection at the time he is required to submit the financial information necessary to obtain court-appointed counsel.
 
 
 38
 KOELSCH, Circuit Judge, concurring and dissenting:
 
 
 39
 There can be little doubt of the validity of the proposition, declared in the opinion, that the First Amendment is not confined to the traditional right of the public and press to attend criminal trials but also extends to permit access to "pretrial release proceedings and documents filed therein."[1]
 
 
 40
 My brothers, of course, are careful to point out that this extension, too must be tempered in the light of the Sixth Amendment's guaranty of fairness to a person accused of crime.
 
 
 41
 However, citing numerous cases, they conclude that, in this instance, the district judge unduly emphasized or failed to give sufficient weight to factors material to his conclusion that the records, if published, would probably unfairly prejudice the accused on trial. They are firmly convinced that his ruling constituted "error as a matter of law."
 
 
 42
 I am not. In matters of this kind, any determination, involving as it does forecasts of probabilities is largely subjective and should not be disturbed (particularly by those not in a favorable position to know) absent the presence of error clearly apparent. Here there is none. The appraisal now under attack was made by a local and experienced district judge; his memorandum decision is concise and cogent; it shows that he accurately and fairly considered all relevant factors before entering his order.[2] On this record, I submit, it is mere speculation to conclude "as a matter of law" that he gave undue weight--or no weight--to any of them. In sum, I am firmly convinced no egregious error is apparent. The writ should not issue.
 
 APPENDIX
 UNITED STATES DISTRICT COURT
 WESTERN DISTRICT OF WASHINGTON
 
 43
 United States of America, Plaintiff,
 
 
 44
 v.
 
 
 45
 Stella Nickell, Defendant.
 
 No. CR87-276WD
 
 46
 MEMORANDUM DECISION AND ORDER ON MOTION TO UNSEAL JUDICIAL RECORDS
 
 
 47
 The Seattle Times has moved for an order unsealing certain parts of the file that were previously ordered sealed in this criminal case. The Hearst Corporation, publisher of the Seattle Post-Intelligencer, and Tacoma News, Inc., publisher of the News Tribune, have joined in the motion.
 
 
 48
 Both parties in the case, the government and the defendant Stella Nickell, oppose the motion to unseal.
 
 
 49
 The movants rely on the first amendment guaranty of freedom of speech and of the press. The plaintiff and defendant rely on the sixth amendment guaranty of trial by an impartial jury. The motion exemplifies what the Ninth Circuit, in a similar context, has called the "clash" between these constitutional rights. Levine v. District Court, 764 F.2d 590, 591 (9th Cir.1985), reh. denied, 775 F.2d 1054 (1985).
 
 
 50
 The defendant was indicted on December 9, 1987, on five counts under 18 U.S.C. Sec. 1365, an anti-product-tampering statute. The grand jury has charged that she implanted potassium cyanide, a lethal poison, in Excedrin capsules. In two of the counts it is alleged that death resulted. One of the alleged victims was the defendant's husband; the other was a young woman unknown to her. Two of the other counts allege that Excedrin capsules poisoned by the defendant were found on store shelves open to the public. Each of the two counts in which death is alleged carries a maximum penalty, upon conviction, of a fine of not more than $100,000, or imprisonment for any term of years or for life, or both. 18 U.S.C. Sec. 1365(a)(2). Each of the other three counts carries, upon conviction, a maximum penalty of a fine of not more than $50,000, or imprisonment for not more than ten years, or both. 18 U.S.C. Sec. 1365(a)(4).
 
 
 51
 In May, 1987, while the case was under investigation, the defendant applied for court-appointed counsel. In support of her application she signed and filed a financial affidavit describing her income, property, and other financial details. United States Magistrate John L. Weinberg granted the application and entered an order on May 15, 1987, appointing the Federal Public Defender to represent defendant. Magistrate Weinberg determined that the financial affidavit included information potentially prejudicial to defendant and ordered it sealed. A second financial affidavit, dated December 9, 1987, was also sealed.
 
 
 52
 On December 9, 1987, following return of the indictment, United States Magistrate Philip K. Sweigert ordered that a bench warrant be issued and gave notice in his order that the United States Attorney's office had indicated that it would request a detention hearing. The government and the defendant submitted briefs on the pretrial detention issue. Both parties moved for leave to file their briefs under seal to avoid pretrial publicity damaging to the defendant's right to trial by an impartial jury. Each party concurred in the other's motion. In response to these motions, Magistrate Sweigert entered orders on December 9 and December 11, 1987, allowing the two briefs to be filed under seal.
 
 
 53
 On December 11, 1987, at the time of defendant's first appearance before the court, a hearing was held before Magistrate Sweigert on plaintiff's application for a detention order. The hearing was public. Both parties were represented by counsel, who presented oral argument to supplement their briefs.
 
 
 54
 On December 11, 1987, the magistrate entered a pretrial detention order.
 
 
 55
 On December 14, 1987, plaintiff and defendant presented a joint motion to the magistrate to withdraw from the file the briefs filed by them under seal in connection with the detention hearing. An agreed order, directing the clerk to withdraw the sealed briefs and return them to the respective parties, was entered by the magistrate on that date.
 
 
 56
 On December 14, 1987, defendant moved for revocation of the detention order. On December 15, her counsel filed a supplemental memorandum, with attachments, in support of her motion. These materials were placed in the open file.
 
 
 57
 The court reviewed the record de novo and on December 17, 1987, entered a memorandum decision denying the motion to vacate and ordering that the defendant remain in pretrial detention. The same order directed the clerk of the court to refile, under seal, the briefs that had been withdrawn pursuant to the stipulated order entered by the magistrate on December 14.
 
 
 58
 The defendant appealed the detention order to the Ninth Circuit. On January 8, 1988, the court of appeals affirmed the order.
 
 
 59
 The case was initially set for trial commencing February 16, 1988. On January 7, 1988, the defendant moved for a continuance to April 18. The government agreed that a continuance was necessary and had no objection to the proposed date. On January 14, an order was entered continuing the trial to April 18, 1988.
 
 
 60
 The Seattle Times's motion to unseal was filed on December 18, 1988. The Hearst Corporation joined in the motion on December 24, 1987, and Tacoma News, Inc. did so on January 6, 1988. A hearing was held on January 11, 1988, at which counsel for all three newspapers, and counsel for the parties, gave oral argument for and against unsealing. The three movants and both parties have also submitted briefs.
 
 
 61
 All of the court proceedings in this case have been open to the public. The indictment and all motions, briefs, orders, and other parts of the file are unsealed and open to the public with four exceptions: the two financial affidavits filed by the defendant Stella Nickell in support of her application for court-appointed counsel, and the two briefs initially filed by the parties for and against pretrial detention. The question is whether these four documents, or any of them, should be unsealed in whole or in part.
 
 
 62
 For the reasons given below, the court has determined that the motion to unseal must be denied at the present stage. It is expected that the documents will be ordered unsealed, without a further motion or other proceedings, when the jury returns its verdict. Until then, they should remain under seal to protect the defendant's constitutional right to trial by a fair and impartial jury.
 
 
 63
 The movants publish the three largest daily newspapers in the Western District of Washington. There is no doubt as to their diligence in seeking to protect first amendment rights or as to their standing to bring the present motion.
 
 
 64
 The first amendment right of the public and the press to have access to criminal trials is well established. Press Enterprise Co. v. Superior Court, [478 U.S. 1] 106 S.Ct. 2735, [92 L.Ed.2d 1] (1986), (Press-Enterprise II); Richmond Newspapers, Inc. v. Commonwealth of Virginia, 448 U.S. 555 [100 S.Ct. 2814, 65 L.Ed.2d 973] (1980). Openness is essential because it "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system" Press Enterprise II, 106 S.Ct. at 2741 (quoting Press Enterprise Co. v. Superior Court, 464 U.S. 501, 504 [104 S.Ct. 819, 821, 78 L.Ed.2d 629] (1984) (Press Enterprise I)). The right of access extends, with certain qualifications, to pretrial proceedings and court documents in criminal cases. Press-Enterprise II, 106 S.Ct. at 2741; CBS, Inc. v. District Court, 765 F.2d 823, 825 (9th Cir.1985); Application of the Herald Co., 734 F.2d 93, 98 (2d Cir.1984); Associated Press v. District Court, 705 F.2d 1143, 1145 (9th Cir.1983); United States v. Chagra, 701 F.2d 354, 364 (5th Cir.1983); United States v. Brooklier, 685 F.2d 1162, 1167 (9th Cir.1982).
 
 
 65
 The right of access is not absolute. For example, the reports of probation officers considered by the courts in setting bail and determining sentences are not made public, although of course the proceedings themselves are open. 18 U.S.C. Sec. 3153(c)(1); Fed.R.Cr.P. 32(c)(3). Moreover, the sixth amendment guarantees every defendant the right to a fair trial by an impartial jury. The Supreme Court has long recognized that prejudicial pretrial publicity can have the effect of defeating that right. E.g., Irwin v. Dowd, 366 U.S. 717 [81 S.Ct. 1639, 6 L.Ed.2d 751] (1961); see also Erickson, "Fair Trial and Free Press: The Practical Dilemma," 29 Stan.L.Rev. 485, 487-88 (1977). It follows that the "public's right of access to criminal proceedings is not absolute, and ... must in some circumstances give way to the paramount rights of the accused." In re Globe Newspaper Co., 729 F.2d 47, 52 (1st Cir.1984). The Supreme Court has placed an affirmative duty on trial courts in this respect:
 
 
 66
 To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.
 
 
 67
 Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378 [99 S.Ct. 2898, 2904, 61 L.Ed.2d 608] (1979).
 
 
 68
 In Gannett, the Court upheld the exclusion of the public from a pretrial hearing on a motion to suppress evidence, and temporary denial of access to the hearing transcript, to ensure the defendant's right to a fair trial. Id. at 394 [99 S.Ct. at 2912].
 
 
 69
 Consistent with the Supreme Court's mandate, the local rules of this district provide (with exceptions not relevant here) that counsel for the prosecution and defense in a criminal case shall not release any pretrial statement concerning the defendant's past criminal record, the existence or content of any confession or admission, the performance of any tests, any opinion as to the accused's guilt or innocence, and other matters which if disseminated would be likely to interfere with a fair trial. Local Rule W.D.Wash. CrR 53.
 
 
 70
 The Ninth Circuit, seeking to protect both first amendment and sixth amendment rights as fully as possible, has adopted a three-part test applicable to requests for the sealing of pretrial documents in a criminal case. In order for public access to be denied, the trial court must make specific findings that there is a substantial probability that:
 
 
 71
 (1) Irreparable damage to the defendant's right to a fair trial will result if the documents are not sealed;
 
 
 72
 (2) alternatives to closure will not adequately protect the defendant's right to a fair trial; and
 
 
 73
 (3) closure will effectively protect against the perceived harm.
 
 
 74
 Associated Press, 705 F.2d at 1146; see also, Brooklier, 685 F.2d at 1167.
 
 
 75
 The government argues here that the Associated Press test should not be applied because the briefs submitted on the pretrial detention issue were analogous to other submittals that are traditionally and lawfully confidential, such as the reports of the probation office in regard to fixing bail and sentencing. It points out that the briefs sealed by Magistrate Sweigert at the parties' request dealt only with the preliminary question of pretrial detention under the Bail Reform Act, that the hearing was open, that the court orders on the subject are open, and that all other proceedings and documents in the case are open and accessible. It argues:
 
 
 76
 The issue here is whether the Government may bring to the attention of the Court information on those factors upon which the Court is required to base its decision on detention, without publicly revealing prior to trial the details of its case.
 
 
 77
 * * *
 
 
 78
 [W]e submit that a qualified right of access does not apply to [the sealed briefs] at this time. Were it otherwise, the petitioners could equally claim a constitutional right of access to the pretrial services report, to grand jury materials, to discovery materials prior to those materials being published, and to pretrial sentence reports by the Probation Office.
 
 
 79
 Government's Response to Motion to Unseal Documents, pp. 3, 8.
 
 
 80
 In questioning whether the movants have a qualified right of access to the documents in question--i.e., whether the Associated Press test should apply in the first place--the government has raised a constitutional issue which need not be decided in ruling on the present motion. For purposes of the present ruling the court will assume, without deciding, that the sealed documents are within the realm of those to which the media ordinarily have a qualified right of access, and will apply the Associated Press test.
 
 
 81
 1. Irreparable damage to the defendant's right to a fair trial. This is the first part of the Associated Press standard. The sealed briefs contain damaging statements describing evidence which will presumably be admissible at trial; alleged facts relating to the crimes charged which will not be admissible at trial; and alleged facts of the defendant's record and background, some of which will probably not be admissible.
 
 
 82
 If the briefs were unsealed, there is no doubt that the more dramatic parts of their contents would be publicized heavily throughout the district. The indictment and arrest, following a long and complex investigation by federal law enforcement officials, have already brought intensive publicity. As the Times correctly states in its brief, "Local newspaper and broadcast media have already given this case widespread coverage...." (Memorandum of Seattle Times, p. 8.) The media have reported that this case is the first prosecution of its kind in the country, and the dramatic nature of the charges is obvious.
 
 
 83
 Under these circumstances, it is clear that unsealing the briefs in question before trial would create a substantial probability of damage to the defendant's constitutional right to a fair trial by an impartial jury. The effect would be especially profound among those potential jurors who read newspapers or watch or listen to broadcast news. The damage would be irreparable for the reasons given below.
 
 
 84
 While nearly all the arguments have addressed the detention briefs, the motion extends as well to the defendant's two financial affidavits. These would be of far less interest to the public and the press, but they do contain material potentially damaging to the defendant. Moreover, they were signed and filed by her in order to secure her Sixth Amendment right to counsel. Under the circumstances, they too should remain sealed at this stage.
 
 
 85
 2. Alternatives to closure will not adequately protect the defendant's right to a fair trial. It should be noted first that the sealing of two briefs and two financial affidavits, while all court proceedings and all other documents are open, is a far more limited measure than those involved in the leading cases where closure was disapproved. Compare, for example, Press Enterprise II, supra, (the trial court excluded the public from a 41-day preliminary hearing conducted to determine whether there was sufficient evidence to charge the accused, sealed the transcript, and persisted in the sealing even after the defendant waived his right to a jury trial); Press Enterprise I, supra, (the trial court closed all but three days of a six-week voir dire proceeding, later refused to release the transcript, and failed to make specific findings justifying closure); and Globe Newspaper Co. v. Superior Court, 457 U.S. 596 [102 S.Ct. 2613, 73 L.Ed.2d 248] (1982) (a state statute excluded the public from all trials during the testimony of a sex offense victim under the age of 18). Here, the sealing is limited to four documents in the pretrial file, and is also limited in time. Once the verdict has been returned, it is expected that there will be no further need for sealing and the documents will be placed in the open file.
 
 
 86
 The potential alternatives to sealing are as follows:
 
 
 87
 (a) Voir dire. While a searching voir dire examination can be helpful, it cannot guarantee an impartial jury under all circumstances. For example, a juror may in good faith disclaim any knowledge of the case, only to recall later, after the evidence starts to come in, a damaging fact (perhaps inadmissible) that he or she learned through the media. As stated in a recent text: "Even the most careful voir dire cannot assure that the jury finally selected is not in some undiscovered way 'tainted' by the publicity which has occurred." 2 LaFave and Israel, Criminal Procedure Sec. 22.1 at 751 (1984).
 
 
 88
 It has been argued that a jury might be empaneled limited to veniremen who have not read or heard the news. Whatever the feasibility of doing that might be, it would not be a satisfactory solution. As stated by the Ninth Circuit in Levine, 764 F.2d at 600, quoting the district court opinion in the same case:
 
 
 89
 It is not in the parties' interest or in the interest of justice to exclude from the jury all citizens who read the Los Angeles Times or who otherwise keep abreast of current events.
 
 
 90
 Similar is the holding in United States v. Simon, 664 F.Supp. 780, 793 (S.D.N.Y.1987):
 
 
 91
 In the Court's view, absence from the jury of individuals who read daily newspapers and keep abreast of newsworthy developments is simply not the best of all possible worlds, especially in a lengthy and complex criminal case where decisions regarding guilt or innocence will often require painstaking attention to evidentiary detail.
 
 
 92
 (b) Peremptory challenges and admonitions to the jury. These measures would not adequately protect the defendant's right to a fair trial for the reasons set forth in regard to voir dire, above.
 
 
 93
 (c) Continuance or change of venue. These measures may be appropriate when the harm has already been done. The goal here is to avoid the harm in the first place. A continuance unwanted by the defendant, or a change of venue, would undercut her right to an early trial in this district.
 
 
 94
 (d) Redaction. This alternative has been discussed by counsel and carefully considered. Releasing edited versions of the documents might be a reasonable solution in some cases, but would serve no purpose here. The sealed briefs are relatively short (the government's is twelve pages in length and the defendant's is eleven pages), and the financial affidavits are one page each. To excise the potentially damaging material would leave very little except legal arguments, citations, and background facts which are already public. There would be no substantial benefit to the movants, the parties, or the public in attempting redaction.
 
 
 95
 (e) Restraint by the media. It has been suggested in oral argument that if the briefs are unsealed the media will act responsibly in trying to avoid the publication of facts or allegations that would be especially damaging to the defendant's right to an impartial jury. While the three movants would undoubtedly act responsibly, there are difficulties with the argument. First, it would have the press replace the court as the entity responsible for carrying out the Supreme Court's directive in Gannett, supra. Second, there are numerous other newspapers, and many broadcasting stations, in the district, and no way to assure that the most damaging contents of the briefs would escape the full glare of publicity.
 
 
 96
 3. Closure will effectively protect against the perceived harm. This element is fully satisfied. Retaining the briefs and affidavits temporarily under seal should prevent the spread of publicity unduly damaging to the defendant's right to a fair trial.
 
 
 97
 It does not follow from the foregoing that sealing would be appropriate whenever adverse pretrial publicity is likely. On the facts of this case, however, given the high level of publicity already demonstrated, the unusually serious nature of the charges, and the contents of the sealed documents, the Associated Press test is met.
 
 
 98
 For the reasons stated, the motion to unseal is denied at the present stage of the case. The motion need not be renewed later and will be treated as continuing. During or before the jury deliberations the court will make a further ruling on the motion. Absent some compelling reason that is not now apparent, the two briefs and the financial affidavits will be unsealed when the verdict is returned.
 
 
 99
 DATED: January 19, 1988.
 
 
 100
 SUPPLEMENTAL ORDER RE MOTION TO UNSEAL JUDICIAL RECORDS
 
 
 101
 The order entered herein on January 19, 1988, provided that the motion of three newspaper publishers to unseal certain pretrial documents would be treated as continuing, and that a subsequent ruling would be made. (Order, p. 1525 supra.) Upon a further review of the authorities the court has determined that redacted copies of the sealed detention briefs should be placed in the open file. That alternative was rejected in the January 19 order on the basis that it would serve no purpose since "[t]o excise the potentially damaging material would leave very little except legal arguments, citations, and background facts which are already public." (Order, p. 1525 supra..) However, even if the parts that can be unsealed would add little or nothing to what has been said by counsel in open court or in other briefs on file, they should still be disclosed. The first amendment right of access extends to cumulative materials as well as to others. A temporary denial of access should be no greater than necessary to protect the defendant's sixth amendment rights. See United States v. Brooklier, 685 F.2d 1162, 1172 (9th Cir.1982).
 
 
 102
 Accordingly, the court has redacted a set of the sealed briefs to the extent found to be essential to protect the defendant's right to a fair trial by an impartial jury. Counsel for the government and for the defendant have examined these today and have confirmed that they have no objection to the editing. The clerk is directed to place copies of the redacted briefs in the open file.
 
 
 103
 The two financial affidavits placed under seal by the magistrate are in a different category. These were provided and signed by the defendant herself in order to obtain free appointed counsel. They have not been disclosed to the prosecution. Especially in view of the government's allegations as to motive, the contents of these affidavits are such that unsealing of any part of them at this stage would be inconsistent with the protection of defendant's rights under the fifth amendment.
 
 
 104
 The order of January 19, 1988 remains in full force and effect except insofar as modified above. Today the defendant has filed a motion for a change of venue. A hearing on that motion will be held at 1:30 p.m. on February 22, 1988, unless an earlier hearing date is ordered by agreement before that time. Counsel for the movant publishers are requested to attend the hearing so that consideration can be given at that time to unsealing the remaining parts of the detention briefs if a change of venue is ordered.
 
 
 105
 Dated: February 8, 1988.
 
 
 
 [1]
 The government does not make this argument with regard to the financial affidavits. We assume, therefore, that the affidavits are pretrial documents subject to the right of access under the general rule expressed in Brooklier
 
 
 [2]
 This court has also set forth procedural prerequisites to entry of a closure order: 1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections, and 2) the reasons supporting closure must be articulated in findings. Brooklier, 685 F.2d at 1167-68. These requirements were met here
 
 
 [3]
 On February 22, 1988, the district court denied defendant's motion for change of venue without prejudice to the renewal of the motion
 
 
 [4]
 Because we decide that the possibility of incrimination is too speculative at this point, we do not address whether Nickell's statements on the financial affidavit were compelled. This court has not previously decided whether a defendant acts under state compulsion when he discloses financial information in order to obtain appointed counsel. We have, however, noted that execution of such an affidavit may raise fifth amendment concerns. See United States v. Ellsworth, 547 F.2d 1096 (9th Cir.1976). In Ellsworth, the court did not need to address whether the testimony was compelled because any self-incrimination problem was alleviated when the court assured the defendant that the affidavits would not be used in a future criminal prosecution. Id. at 1098. We do not read Ellsworth as condoning the practice of assuring a defendant that material will be sealed and not disclosed to the government, since any sealing order is subject to review. An unqualified assurance would be appropriate only if the government agreed in advance not to utilize the information if it were ordered disclosed
 
 
 [1]
 The support for this modern day development however, should be regarded as weaker than that given for public access to trials. Note the perceptive comment of Brennan, J., concurring, in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 598 n. 25, 100 S.Ct. 2814, 2839 n. 25, 65 L.Ed.2d 973 (1980). "Significantly, closing a trial lacks even the justification for barring the door to pretrial hearings: the necessity of preventing dissemination of suppressible prejudicial evidence to the public before the jury pool has become, in a practical sense, finite and subject to sequestration."
 
 
 [2]
 Attached hereto is a copy of Judge Dwyer's memorandum decision