107 F.3d 877
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David M. DAUGHTREY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-56400.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1996.
Decided March 4, 1997.
 
 Before: HALL, KOZINSKI and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In April 1992, appellant Daughtrey was arrested for the sale of illegally altered cellular telephones. At the time of his arrest, the police seized numerous monetary instruments, altered cellular telephone chips, and a 1991 Mercedes Benz motor vehicle. The U.S. Secret Service ("Secret Service") then continued its investigation of Daughtrey's activities with others nationwide and the circumstances surrounding Daughtrey's acquisition of the instruments (many of which were not made out or endorsed to him).
 
 
 3
 Eight months following his arrest, the Secret Service sent Daughtrey notice of its intention to forfeit the monetary instruments. Sixteen months after Daughtrey's arrest, the Secret Service sent notice of its intention to forfeit the vehicle as well. In order to protest the forfeitures, Daughtrey needed to either submit a cost bond or an in forma pauperis ("IFP") petition to waive the bond requirement. He submitted an IFP form which is accepted by several other federal agencies, but which was rejected by the Secret Service, which has its own IFP form. He then completed the Secret Service form, which the Secret Service again rejected because of incomplete and/or ambiguous entries. The Secret Service proclaimed the funds forfeited on January 14, 1994, and the vehicle forfeited on May 16, 1994.
 
 
 4
 Daughtrey brought a Fed.R.Crim.P. 41(e) motion in the Central District of California challenging the forfeitures. The district court treated the motion as a civil equitable proceeding. The district court found that the eight-month delay in instituting forfeiture proceedings against the monetary instruments was not a due process violation, but that the sixteen-month delay in instituting proceedings against the vehicle was undue delay and constituted a due process violation. The vehicle, however, had already been returned to Mercedes-Benz Capital Corporation ("MBCC"), the priority lienholder, which sold the car above blue-book value but was still owed a few thousand dollars. The district court, after considering motions regarding the defendant's equity in the vehicle, determined that the defendant had no equity in the car, since the outstanding lien exceeded the car's value. The district court also denied attorney's fees to Daughtrey under the Equal Access to Justice Act (the "EAJA"). Daughtrey appeals the denial of his equitable motion as to the monetary instruments, the determination that he had no equity in the vehicle, and the denial of attorneys' fees.
 
 I. Forfeiture of the Monetary Instruments
 
 5
 A. Double Jeopardy.
 
 
 6
 Daughtrey's double jeopardy argument has been foreclosed by the Supreme Court's recent ruling that civil forfeiture proceedings do not constitute "punishment" within the meaning of the double jeopardy clause. United States v. Ursery, 116 S.Ct. 2135 (1996).
 
 
 7
 B. Due Process, the Fifth Amendment, and the IFP Application.
 
 
 8
 Daughtrey claims filling out the IFP form to prove his inability to post the required bond could have incriminated him with the Internal Revenue Service ("IRS"). To claim the Fifth Amendment privilege, the accused must be faced with substantial hazards of self-incrimination that are "real and appreciable" and not merely "imaginary and unsubstantial." United States v. Drollinger, 80 F.3d 389, 392 (9th Cir.1996). Although the IRS was not a party to the forfeiture proceeding, and the crime alleged was not a tax-related crime, Daughtrey argues that he feared the Secret Service would share the financial information on the form with the IRS. Even if we assume that the disclosure could incriminate him in some fashion, any violation of Daughtrey's rights is "speculative and prospective only." Seattle Times Co. v. United States District Court for the Western District of Washington, 845 F.2d 1513, 1519 (9th Cir.1988); see also United States v. Peister, 631 F.2d 658, 662 (10th Cir.1980), cert. denied, 449 U.S. 1126 (1981). The time for protection under the Fifth Amendment is if the government attempts to use the information in a criminal proceeding. Seattle Times, 845 F.2d at 1519.
 
 
 9
 C. Overbreadth of the IFP Form.
 
 
 10
 In the analogous area of IFP petitions for appointment of counsel, courts are given broad discretion to insure indigency (so long as requirements imposed are not so burdensome as to deprive the claimant of meaningful access to the courts). Cf. United States v. Lyons, 898 F.2d 210, 216-217 (1st Cir.1990); United States v. McQuade, 647 F.2d 938, 940 (9th Cir.1981) (per curiam), cert. denied, 455 U.S. 958 (1982); In re Green, 669 F.2d 779, 786 (D.C.Cir.1981).
 
 
 11
 Daughtrey argues that the Secret Service should have accepted his initial IFP application, even though he did not use the Secret Service IFP form. The Secret Service's rejection of Daughtrey's first IFP form did not implicate his due process rights, however, since the rejection did not foreclose his ability to participate in the proceeding: the Secret Service provided Daughtrey with the appropriate IFP form and gave him an opportunity to complete it before continuing with the forfeitures. Daughtrey contends that the Secret Service form was unduly burdensome and overboard. The Secret Service IFP application is only 6 pages long, and all of the requested information is relevant to proof of indigency. Although the Secret Service IFP application may be more involved than IFP forms of other agencies, it is not so burdensome as to constitute a violation of due process.
 
 
 12
 D. Probable Cause to Seize.
 
 
 13
 Daughtrey consented to the search of his home in writing and gave a written confession. The confession stated that together with two individuals in Los Angeles, Daughtrey had been buying and selling cellular phones with altered chips, and had used the money to put a $30,000 downpayment on his house and a $20,000 downpayment on a Mercedes. Daughtrey also indicated that he and his companions opened accounts in the name of Jesus Rizo, and ran about $75,000 through the accounts. On these facts, the district court correctly determined that there was probable cause for the search and the seizure of the monetary instruments.
 
 
 14
 E. Constitutionality of the Civil Forfeiture Statutes' Standard of Proof.
 
 
 15
 Daughtrey argues that the government should be required to reach a higher threshold than the "probable cause" standard of the current statute. We need not reach this issue since the government could have satisfied even a "beyond a reasonable doubt" standard in light of Daughtrey's signed confession, discussed above.
 
 
 16
 F. The Eight-Month Wait.
 
 
 17
 While forfeiture should proceed without undue delay, there are no specific time limits for initiation of proceedings. United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1147 (9th Cir.1989). The Supreme Court has established a test weighing four factors to determine if the delay was unreasonable: length of delay, reason for delay, claimant's assertion of his rights, and prejudice to claimant. United States v. $8,850, 461 U.S. 555, 564 (1983).
 
 
 18
 First, the eight-month delay between the seizure of the funds and the notice of intent to forfeit is not per se unreasonable. United States v. $874,938 U.S. Currency, 999 F.2d 1323, 1325 (9th Cir.1993). In fact, delays as long as 18 months and 28 months have been permitted. $8,850, 461 U.S. at 569; United States v. $292,888.04, 54 F.3d 564, 566-67 (9th Cir.1995). Second, the district court found that the reason for delay was a broad ongoing investigation, using the monetary instruments to tie together participants in a nationwide fraud involving numerous jurisdictions. An ongoing investigation is a recognized justification for delay in instituting civil forfeiture proceedings. See United States v. $47,980 in Canadian Currency, 804 F.2d 1085, 1089 (9th Cir.1986), cert. denied, 481 U.S. 1072 (1987). Third, although Daughtrey was present when the funds were seized, he did not inquire about the status of the funds during the eight months before he received the intent notice. Cf. $8,850.00, 461 U.S. at 568-69; $292,888.04, 54 F.3d at 567. Finally, the district court found no evidence that Daughtrey's ability to contest the merits of the forfeiture was compromised because of the eight-month delay. Thus, in consideration of all the factors surrounding the monetary forfeiture, the district court properly held that the eight-month delay was not unduly long and thus not a violation of due process.
 
 
 19
 II. The Equity Determination.
 
 
 20
 A party collaterally attacking a forfeiture action may seek return of the forfeited property as an equitable remedy. See Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1099 (9th Cir.1990). In this case, however, Daughtrey's car had already been returned to MBCC, the priority lienholder, who in turn sold the car and applied the sale proceeds to its lien. The district court thus reasoned that Daughtrey should receive a return of his equity in the car, if any. The district court used the date of MBCC's sale of the car to calculate Daughtrey's equity in the vehicle. On that date, the car became unavailable to Daughtrey and any sale proceeds became the substitute property that would be returned to him. Thus, the district court correctly determined that in this action, since Daughtrey still owed MBCC around $1,600, there was no equity to return to Daughtrey.
 
 
 21
 Daughtrey argues his equity in the car should have been calculated at the time of the seizure (when the car's value was higher than the lien amount). As the district court realized, what Daughtrey is really seeking is not an equitable return of the property, but damages for the depreciation in the value of the car from the time of seizure to the time of the car's sale. Daughtrey waited until the forfeiture action was over and sought an equitable return of his property based on a collateral attack of the forfeiture proceedings. The district court made it clear it was exercising equitable jurisdiction over the claim. While Daughtrey is correct that the fact that the property itself cannot be returned does not defeat his claim in equity (see United States v. Martinson, 809 F.2d 1364, 1367-68 (9th Cir.1987) (court in equity may adjust remedies so as to grant the necessary relief)), he cannot transform his equitable action into a damage claim and request both a return of the property (or an equivalent equitable remedy) and damages for depreciation.
 
 
 22
 III. Attorneys' Fees under the EAJA.
 
 
 23
 The request for fees under the EAJA was premature and the district court lacked jurisdiction to decide the question. The EAJA requires that the fee application be filed within 30 days of "final judgment in the action." The EAJA defines "final judgment" as a judgment that is not appealable. 28 U.S.C. § 2412(d)(1)(B). Thus, the time to request attorney's fees is within 30 days after the time to appeal the judgment has expired. Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991). Daughtrey's attorney actually "requested" attorney's fees (for the phase of litigation involving the equity determination) in a reply to the government's response on the motion to determine equity. Thus, the application was made before any decision on this phase was entered, let alone a final one. Because no "final" judgment has been entered in this case, the district court had no jurisdiction to consider the fee petition. Scanlon v. Sullivan, 974 F.2d 107, 108 (9th Cir.1992).
 
 
 24
 The district court's decision regarding the monetary forfeiture is AFFIRMED. The district court's equity determination is also AFFIRMED. The court's decision on attorney's fees under the EAJA is VACATED for lack of jurisdiction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3